UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 11-225-JBC

ROY L. DEATON,                                                                                          PLAINTIFF

V.                              **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                            DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Roy L. Deaton's appeal of his denial of application for Supplemental Security Income ("SSI"). The court will grant the Commissioner's motion, R. 13, and deny Deaton's motion, R. 12, because substantial evidence supports the administrative decision.

When he applied for SSI, Deaton was 44 years old. He has an eighth-grade education, and his past work experience included firefighter, garage laborer, dishwasher, fast food cook, and parts deliverer. AR 20, 32-37, 48-49, 98. He alleged disability beginning January 31, 2009, due to a heart condition. AR 136. He filed his application for DIB on October 16, 2009, which was denied initially and on reconsideration. After a hearing, Administrative Law Judge ("ALJ") Ronald M. Kayser determined that Deaton was not disabled. AR 13-22, 98. Under the traditional five-step analysis, *see Preslar v. Sec'y of Health and Human Services,* 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920, the ALJ found that

1

Deaton had not engaged in substantial gainful activity since October 16, 2009, the alleged onset date; that he had severe impairments consisting of coronary artery disease, hypertensive heart disease, borderline intellectual functioning, and an affective mood disorder; that his impairments, whether singly or in combination, did not meet or equal one of the Commissioner's Listings of Impairments; that he retained the residual functional capacity (RFC) to perform a restricted range of light level work; and that based on his RFC, he could perform his past relevant work as a dishwasher. AR 15-21.  The ALJ thus denied his claim for disability on June 11, 2010.  AR 22.  The Appeals Council declined to review, AR 1, and this action followed.

Deaton's issues on review are: (1) that limitations in his ability to tolerate day-to-day work stresses and respond appropriately to supervision, coworkers, and work pressures, and his inability to manage benefits in his own best interest, would prevent employment on a sustained basis; and (2) that he meets the Commissioner's Listing 12.05C for mental retardation.

The ALJ properly evaluated Deaton's mental restrictions.  Consultative psychological evaluators Catherine Huffman and Christopher Catt examined Deaton on December 22, 2009, and concluded that Deaton had a moderately limited ability to tolerate the stress and pressure of day-to-day employment and respond appropriately to supervision, coworkers, and work pressures in a work setting.  AR 431-32.  They did not conclude that he would have an "inability" to deal with coworkers and supervisors, as Deaton says in his brief.  The ALJ acknowledged a

2

limitation in Deaton's RFC to tolerating coworkers and accepting supervision in an object-focused context with casual and infrequent contacts. AR 18-19. This language tracks the conclusions of a state agency psychologist, Ed Ross, who reviewed the evidence including the Huffman/Catt report, and completed a Mental Residual Functional Capacity Assessment form on January 6, 2010. AR 448-50. As a result, neither the Huffman/Catt report nor the Ross Mental RFC form supports Deaton's assertion that he was unable to deal with coworkers and supervisors.

Deaton cites his testimony that he quit his job as a cook/dishwasher because of an altercation with a coworker as evidence that he could not relate successfully with others in the workplace. AR 35-36. Even by Deaton's own account, this appears to have happened only one time. He stated that he had been able to work as a firefighter until he was laid off, AR 34, and had quit his job as a fast food cook because he did not like the working conditions, AR 36.

Huffman and Catt did state that Deaton could not manage any potential benefits in his own interest. AR 432. Deaton has not presented evidence to show that such a non-vocational limitation would preclude his ability to return to his past relevant work as a dishwasher. It is the plaintiff's burden at Step Four to prove that he is incapable of returning to his past relevant work; the burden does not shift to the Commissioner until Step Five. 20 C.F.R. § 416.920(a)(4)(iv)-(v); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Deaton has not met his burden.

Deaton has not shown that he meets all of the requirements of the Commissioner's Listing of Impairment (LOI) 12.05C for mental retardation.  LOI 12.05C defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports the onset of impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.  The Listing goes on to say that the required level of severity for the disorder is met where a claimant can show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  Id.

In *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit held that a claimant must satisfy "the diagnostic description for the listed impairment in order to be found disabled thereunder." *Id.* at 354.  Although the Listing refers to "mental retardation," in the present case the psychologists diagnosed not mental retardation but borderline intellectual functioning.  AR 431.  Moreover, Deaton has not convincingly shown deficits in adaptive functioning initially manifested before age 22, as *Foster* also requires. *Id.* at 355.  Records from Perry County Elementary School show that when Deaton was tested at the ages of 10 and 12, he achieved IQ scores above 80.  AR 217.  While such scores obtained before the age of 16 are considered valid for only two years, as provided in Social Security Ruling 82-54 at *6, at the very least the test results do not help the plaintiff.  Testing in the seventh grade also showed that he was performing at a fourth-grade level.  *Id.*

4

While he may have been behind his age group, the results do not show an inability to read or write. Deaton testified that he withdrew from school because he was needed at home, not because he could not learn. AR 32. At the time he withdrew, he was receiving a B in reading and in general science. AR 218.

In *Foster*, the plaintiff had also left school after ninth grade, but the Sixth Circuit noted that the reasons were unclear, and this alone was not sufficient to show deficits in adaptive functioning. *Foster*, 279 F.3d at 355. In the present case, the available evidence suggests that learning difficulties were not the reason Deaton quit school.

Additionally, Deaton has failed to show that he has ever been diagnosed with mental retardation. *See Daniels v. Commissioner of Social Security*, 2003 WL 21774004 (6th Cir. 2003), for a similar factual situation in which the Sixth Circuit found that the claimant had not met the LOI 12.05C. Accordingly, Deaton's argument is without merit.

The ALJ having properly applied the relevant legal standards and his decision being supported by substantial evidence,

**IT IS ORDERED** that Deaton's motion for summary judgment, R. 12, is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment, R.13, is **GRANTED**.

The court will enter a separate judgment.

Signed on July 6, 2012

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

6